IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KATIE M. KONONEN,                                    Case No. 6:21-cv-00179-AP

               Plaintiff,                            **OPINION & ORDER**

     v.

CITY OF SALEM HOUSING AUTHORITY,

               Defendants.
_____

POTTER, United States Magistrate Judge:

     Plaintiff Katie Kononen alleges that Defendant City of Salem Housing Authority (SHA) has engaged in a pattern of discrimination against her, based on disability and race and ethnicity. First Amended Complaint, ECF No. 28 (FAC). She brings claims under the Fair Housing Act (FHA) and Title II of the Americans with Disabilities Act (ADA) for discrimination due to disability and race and ethnicity. She also brings corresponding state law claims under ORS 659A.145 and ORS 659A.421 for housing discrimination due to disability and race and ethnicity. Finally, Plaintiff brings a claim under Oregon's Residential Landlord and Tenant Act (ORLTA) for failure to maintain her apartment in a habitable condition.

     Defendant moves for judgment on the pleadings on Plaintiff's state law claims, arguing that Plaintiff failed to comply with the notice provision of the Oregon Tort Claims Act. Def.'s Mot. 28-35, ECF No. 82. Defendant moves for summary judgment on all of Plaintiff's claims, arguing insufficiency of the evidence. Def.'s Mot. 11-35. Finally, Defendant moves to dismiss the ORLTA claim, arguing that the Court lacks subject matter jurisdiction. Def.'s Mot. 33-34.

All parties have consented to jurisdiction by a U.S. Magistrate Judge. ECF No. 54. Because Plaintiff's lawsuit provided statutory notice, Defendant's Motion for Judgment on the Pleadings is DENIED. Because Plaintiff has identified genuine issues of material fact as to certain claims, Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. Because the Court is declining to exercise supplemental jurisdiction over the ORLTA claim, Defendant's Motion to Dismiss as to that count is GRANTED.

## BACKGROUND

Defendant SHA is an Oregon housing authority that provides rental housing assistance to residents in the Salem/Keizer, Oregon area. In that capacity, Defendant owns and operates Glen Creek Village, a 60-unit housing complex in West Salem. Plaintiff has lived at Glen Creek since 1984 and in her current unit since 1992. First Schmidt Decl. Ex. 7 (Kononen Depo.) at 33.[1] Plaintiff currently lives in a four-bedroom unit with five of her adult children.

In 2010, after SHA issued her an eviction notice, Plaintiff filed a complaint with Oregon's Bureau of Labor and Industries and with the United States Department of Housing and Urban Development, alleging that SHA had discriminated against her based on her disability. First Schmidt Decl. Ex. 9 (Conciliation Agreement) at 1-2. After some meetings, Plaintiff and SHA representatives signed a Conciliation Agreement. *Id.* at 6. As part of this settlement, Plaintiff agreed that "members of her household will contact Nina Donnelly . . . prior to reporting any complaints about other residents to [SHA]." *Id.* at 4. SHA was still required to "engage in an appropriate interactive process" when Plaintiff requested a disability-related accommodation.

---

[1] For ease and consistency, the Court uses the deposition page and line numbers rather than the exhibit page numbers.

Since the agreement was signed in 2010, Plaintiff has continued to have issues and has called Ms. Donnelly about every other day. First Schmidt Decl. Ex. 3 (Donnelly Depo.), at 10:4-5, ECF No. 84. Ms. Donnelly has recorded Plaintiff's complaints in five notebooks with "hundreds of pages." Donnelly Depo. 11:16-18. But Ms. Donnelly has not reported all of these complaints to SHA because she did not want to further harm Plaintiff's credibility and because she felt some are inappropriate. Donnelly Depo. 50, 63. Although the Conciliation Agreement only specified that Plaintiff take complaints about other residents to Ms. Donnelly first, Ms. Donnelly acted as an intermediary for other issues Plaintiff had. Donnelly Depo. 47-48.

As Ms. Donnelly described, Plaintiff had multiple complaints about how she was treated by Defendant. And, per Plaintiff, despite the Conciliation Agreement, Defendant failed to engage with her on complaints unrelated to other residents and engaged in a pattern of discriminatory and retaliatory conduct towards her. FAC ¶ 14.

For purposes of this case, there are several different actions that Plaintiff contends demonstrate that Defendant discriminated against her. First, Plaintiff points to Defendant's delays in approving an additional service dog. Next, she contends her car was towed for parking over a line when other tenants did not face the same penalty. Plaintiff also alleges that Defendant made her remove a fence when other tenants were allowed to keep it. Plaintiff complains about Defendant's enforcement (or lack thereof) of the complex's smoking regulation. Finally, Plaintiff alleges that Defendant failed to properly maintain her apartment. To prove these actions were driven by discriminatory animus, Plaintiff points to separate statements by two SHA employees—Robert Haley, the Property Management Coordinator, and Lyle Durbin, the Maintenance Supervisor—about her disability and Native American heritage. Defendant

counters that Plaintiff has failed to establish not only disparate treatment or retaliation but also discriminatory intent.

## STANDARDS

### I.     Judgment on the Pleadings

A motion for judgment on the pleadings is appropriate when there are no issues of material fact, and a party is entitled to judgment as a matter of law. *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022). When reviewing a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, a court analyses the motion as it would a motion to dismiss under Rule 12(b)(6). *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). To survive, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court must accept all well-pleaded, material factual allegations and construe them in the light most favorable to the non-moving party. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1240 (9th Cir. 2023). But the court is need not accept as true legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### II.     Summary Judgment

Summary judgment is warranted when, based on the pleadings, depositions, and other interrogatories and admissions on file, together with the affidavits, if any, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A fact is "material" if it could affect the outcome of the case; disputes about irrelevant or unnecessary facts do not preclude summary judgment. *Id.* And the materiality of the fact is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Whether there is a genuine issue of material fact is often a close question. *Id.* Thus, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Ser.*, Inc., 809 F.2d at 630 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot merely rely on allegations in the pleadings or claims that it will discredit the moving party's evidence at trial. *Id.* But neither party need prove any fact conclusively at this stage. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party and when evidence conflicts, the court "must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.* at 631. At bottom, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *Id.*

## III. Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal court. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts also "have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). When the other claims derive

from the same set of facts "such that a plaintiff would ordinarily be expected to try them in one judicial proceeding," they are part of the same case or controversy, and the court should assert supplemental jurisdiction unless an exception applies. *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021). A court may decline jurisdiction when the case raises a novel or complex area of state law or in other exceptional circumstances. 28 U.S.C. § 1367(c).

## **DISCUSSION**

### I.     **Statute of Limitations**

The first question in this case is the time period governing Plaintiff's claims. The FHA and the ADA both contain a two-year statute of limitations. Defendant argues that the relevant filing date for the statutes of limitations is the date of Plaintiff's amended complaint (January 18, 2022) rather than when Plaintiff first filed her complaint (February 1, 2021). Def.'s Mot. 12-14. Plaintiff counters that the operable date is the filing of the original complaint because the additional claims found in her amended complaint relate back to her original complaint and the claims fall under the continuing violations doctrine. Pl.'s Resp. 7-10, ECF No. 87. Neither of Plaintiff's arguments are persuasive.

### *A. The Relation Back Doctrine.*

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Relation back under Rule 15(c) is "liberally" applied, especially when there is no prejudice to defendants. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

Relation back relies on notice; it does not necessarily require the notice of specific claims but, rather, focuses on notice of the facts that form the basis of those claims. *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989). A plaintiff may add additional claims, so long as those claims stem from the same transaction or set of facts, without prejudicing the defendant. *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982) (holding that although the § 1981 claim in the original complaint was barred by the statute of limitations, the Title VII claim in the amended complaint related back). However, when a plaintiff must allege different facts to support their new claims, the amended complaint does not relate back. *Williams v. Boeing*, 517 F.3d 1120, 1133 (9th Cir. 2008) (holding that a compensation discrimination claim was a "new legal theory depending on different facts" and did not relate back to the promotion discrimination claims in the original complaint).

Here, Plaintiff's original complaint brought claims under the FHA. Compl. 3, ECF No. 1. She pointed to two key facts or events in her complaint: Plaintiff alleged that in 2010, Defendant "slandered" her, and that Defendant refused her reasonable accommodation of another dog. Compl. 4.

Plaintiff's amended complaint also brings claims under the FHA, but it greatly expands on the underlying actions that underlie her claims. FAC ¶¶ 16-25. Plaintiff alleges that Defendant discriminated against her by refusing her reasonable accommodation of an additional dog, failing to enforce smoking rules, requiring her to communicate via a third party, enforcing parking rules unequally, and failing to make repairs in a timely manner. FAC ¶ 14. Except for the accommodation for an additional dog, none of the other facts appeared in the original complaint.

Plaintiff acknowledges that the additional facts were not in the complaint, but contends the amended complaint still relates back because the facts were included in other documents

submitted to the Court. While documents that are attached to and incorporated into a complaint are considered part of that pleading, *see* Fed. R. Civ. Pro 10(c), none of the supplemental documents Plaintiff submitted were attached to the original complaint nor did the complaint reference them or incorporate them. Indeed, most of the documents were filed after the original complaint and simply cannot be considered part of the original complaint.

Even if the seventeen pages that were filed that same day as the original complaint are considered, they are not sufficient to provide adequate notice to Defendant of the additional claims. The documents consist of a 2020 letter to a "Judge Atkinson" from Plaintiff that complains about Ms. Donnelly's role as the go-between and details events in 2010 that led to her receiving a "derogatory label," as well as the agreement reached in 2010, some additional documents related to health recommendations including the request for dogs, and a couple of additional letters written on her behalf in 2020. ECF No. 1-1.

Defendant simply cannot be expected to scour those documents to determine if there are additional claims that Plaintiff might be trying to raise. For example, there are multiple documents from the Salem Health Clinic in 2004 saying that second-hand smoke is bad for Plaintiff and her family and a reference in a 2020 letter from Ms. Donnelly to a third-party about a need for an air conditioner due to smoke. While this may put Defendant on notice that Plaintiff had complaints about smoking near her apartment, it does not amount to notice of the facts underlying a claim that Defendant was discriminating against Plaintiff in how it implemented the no smoking policy. And with respect to the other claims, there is no mention of the parking issue or the maintenance issues raised in the amended complaint.

Thus, except for Plaintiff's claim regarding her reasonable accommodation request for an additional dog, Plaintiff's original complaint does not provide Defendant notice of the

transactions or set of facts that form the basis of Plaintiff's claims in her amended complaint. Even applying Rule 15(c) liberally, Plaintiff's claims in the amended complaint do not relate back.

### B. The Continuing Violations Doctrine.

Under the continuing violations doctrine, a plaintiff may challenge a systematic policy of discrimination even if some events "giving rise to the discrimination occurred outside the limitations period." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 (9th Cir. 2009). "A plaintiff must show that a pattern or practice of discrimination creates an ongoing violation." *Id.* However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Plaintiff alleges discrete instances of disparate treatment; the continuing violations doctrine does not apply. Each occurrence is separately actionable and subject to the applicable statute of limitations period. *Lyons v. England*, 307 F.3d 1092, 1106-07 (9th Cir. 2002). To the extent Plaintiff is relying on the continuing violations doctrine for her failure to accommodate or retaliation claims, she still must point to acts that continued into the limitations period which would be controlled by the filing of the amended complaint. *See Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir.), as amended, 271 F.3d 910 (9th Cir. 2001).

Therefore, the filing date for the statute of limitations is February 1, 2021, for Plaintiff's reasonable accommodation claim regarding an additional dog, the day Plaintiff filed her original complaint. For all other claims, the relevant filing date is January 18, 2022, when Plaintiff filed her amended complaint.

II.     **Motion for Judgment on the Pleadings**

Defendant argues that Plaintiff's state law claims are barred because she failed to comply with the notice provision of the Oregon Tort Claims Act. Def.'s Mot. 28-30.

Under the Oregon Tort Claims Act, notice of a claim against a public body must be given "within 180 days after the alleged loss or injury." ORS 30.275(2)(b). Filing a lawsuit constitutes notice of a claim, so long as the suit is filed within the notice period. ORS 30.275(3)(c).

Although Plaintiff does not allege that she complied with the notice provision, her lawsuit constitutes notice under the statute. There is nothing in the plain language of the statute that requires the complaint to specifically refer to the fact that it serves as notice of the act; the amended complaint provided actual notice of the claim. Defendant's motion is denied, but, apart from Plaintiff's claims regarding an additional service dog, Plaintiff's state law claims are limited to 180 days before the first amended complaint.

III.     **Motion for Summary Judgment**

*A. Housing Discrimination due to Disability under the FHA, the ADA, and ORS 659A.145*

At their core, the FHA, the ADA, and ORS 659A.145 prohibit discrimination based on disability. Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Similarly, under Oregon law, "[a] person may not discriminate because of a disability . . . by . . . [m]aking any distinction or restriction against a purchaser in the price, terms, conditions or privileges relating to the sale, rental, lease or occupancy of real property or the furnishing of any facilities or services in connection with the real property." ORS 659A.145(2)(c).

The ADA also provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Plaintiff alleges that Defendant discriminated against her by treating her differently than other tenants, failing to accommodate her disabilities, and retaliating against her for exercising her rights. To prove the claims, she contends Defendant delayed in granting her a second dog, failed to accommodate her disabilities, required Plaintiff to communicate via a third party, treated Plaintiff differently with respect to parking privileges, failed to enforce smoking regulations, and delayed necessary repairs in her home. FAC ¶ 14. Defendant disagrees and contends, with one exception, that Plaintiff has failed point to any material facts supporting her claims. These arguments are addressed in turn.

*1. Disparate Treatment*

Plaintiff contends that SHA treated her differently from other tenants because of her disability and race; this is her disparate treatment claim. Disparate treatment claims under the FHA and ADA "are typically identical, and courts accordingly 'interpret them in tandem.'" *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 n. 4 (2d Cir. 2003)); *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. 2019).

"[T]o prevail on [a disparate treatment] claim a 'plaintiff must establish that the defendant had a discriminatory *intent or motive*.'" *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 661 (9th Cir. 2025) (*quoting Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015)). To show this discriminatory intent, "a

plaintiff may rely on the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." *Id.*

Under the *McDonnell Douglas* framework, a plaintiff may establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was treated differently than other tenants in the terms, conditions, privileges, or the provision of services or facilities in her housing; and (3) that disparate treatment was, at least in part, due to her disability. 42 U.S.C. § 3604(f)(2).

There is no dispute that Plaintiff has a disability and is therefore a member of a protected class. The question is whether there is a genuine issue of material fact as to whether Plaintiff was treated differently from other tenants in certain circumstances and whether any disparate treatment was due, at least in part, to her disability. With one exception, Defendant contends the answer is no. Def.'s Mot. 14-23; Def.'s Reply 16-21, ECF No. 94. The Court disagrees in part.

Defendant first points to the lack of evidence that other tenants were treated more favorably and argues that hurdle is insurmountable because "Plaintiff does not know how other tenants are treated by SHA because she does not interact with them." Def.'s Mot. 15. The evidence before the Court at this stage is not that clear cut. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact regarding whether Plaintiff was treated differently than other tenants, at least for some of her claims.

Plaintiff contends she was treated differently when she requested another dog as an accommodation. Plaintiff first requested a second dog as a reasonable accommodation in October 2020. Second Nagle Decl. Ex 10, ECF No. 89. Plaintiff was not notified that her request had been approved until January 2021. *Id.* By contrast, other reasonable accommodation requests

in 2020 and 2021 were granted within two weeks, frequently the same day the request was made. Second Schmidt Decl. Ex. 5, at 1-5, ECF No. 85. This is sufficient at this stage.

Next, Plaintiff argues that no other tenant is forced to communicate with Defendant via a third party. In signing the Conciliation Agreement in 2010, Plaintiff agreed that she would contact Ms. Donnelly prior to reporting complaints about other residents. Conciliation Agreement ¶ 25. However, Plaintiff has put forth evidence to show that even when she tried to communicate with Defendant about other issues—such as maintenance, rent, or paperwork— Defendant would not respond and would force her to go through Ms. Donnelly. *See, e.g.*, Donnelly Depo. 47-48, 84-85; First Schmidt Decl. Ex. 6 (Haley Depo), at 49:19-20. Again, this claim survives.

Plaintiff also argues that parking rules were selectively enforced. Plaintiff's car was towed when she had parked over the line. Kononen Depo. 194. Although Mr. Haley denied calling the tow company, Plaintiff heard that he had authorized the tow. Haley Depo. 61-62, Kononen Depo. 197. Plaintiff asserts that other tenants frequently park outside the lines and in spaces that are not their designated spots, but they are never towed. Kononen Depo. 194-195, 199-200. And she has photographs in support of her claims. Here, Plaintiff has shown enough evidence to raise a genuine issue of material fact.

Plaintiff asserts that SHA treated her differently when they ordered her to remove a fence around her patio. Defendant agrees and has conceded that Plaintiff was treated differently when Lyle Durbin, SHA's maintenance supervisor, asked her to remove a fence around her patio when other tenants had been permitted fences. Def.'s Reply 20-21. This claim also, therefore, survives summary judgment.

But Plaintiff's other claims do not fare as well. Plaintiff argues that Defendant selectively enforces their smoking policy. Pl.'s Resp. 13. There is no question that Plaintiff has complained about the smoking in and around her apartment. SHA has a policy to deal with this: when there is a concern that a resident or guest is smoking outside of a designated smoking area: first, SHA talks to the resident; if the resident denies smoking, then SHA will do a walk around the property, looking for evidence of smoking; finally, SHA may do a home inspection. If they do not find any evidence, SHA will not continue to ask them about smoking. First Schmidt Decl. Ex. 1 (Blakely Depo.), 45:23-46:11, ECF No. 84. This policy certainly appears to be ineffective and undoubtedly leads to smokers not being caught or stopped, but there is no evidence that SHA enforced the policy differently or failed to follow it with respect to Plaintiff.

Plaintiff's evidence of disparate treatment is focused on an incident when SHA purchased a $CO_2$ detector to attempt to catch smokers in the act. Blakely Depo. 53:7-25. Ms. Blakely testified that tenants smoking was "impacting neighbors' health around it, but we couldn't catch the act. . . So we strategized." *Id.* In invoking this comparator, Plaintiff must show that these tenants were "similarly situated to her 'in all material respects' but [] were given preferential treatment." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quoting *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (analyzing a Title VII disparate treatment claim)). Plaintiff has not done so.

Finally, Plaintiff argues that Defendant delayed repairs or maintenance work. Plaintiff declares that when she reported that her dishwasher did not work, it took maintenance six months to respond; the dishwasher still does not work properly. Kononen Decl. ¶ 6, ECF No. 88. Plaintiff also reported that the safety flood lights behind her unit were out multiple times over six months. *Id.* at ¶ 8. Plaintiff first reported the issue with the lights in December 2020 and emails

indicate that a work order was not generated until May 2021. Kononen Decl. Ex. 2. While the delays are unfortunate, Plaintiff does not point to any evidence that indicates that she was treated differently than other tenants. *Cf. Wilson*, 383 F. Supp. 3d at 1111 ("Plaintiff offers no evidence relating to repairs of any other tenant. Accordingly, Plaintiff has not shown that she was treated differently in the terms and conditions of her unit.") This claim also cannot survive summary judgment.

For the claims for which Plaintiff has shown she was treated differently, she must also show this disparate treatment was, at least in part, due to her disabilities. To do so, Plaintiff alleges that two SHA employees—Mr. Durbin and Mr. Haley—made offensive remarks to her and about her based on her disabilities. FAC ¶ 13.

The evidence of these offensive remarks is based on the testimony of the Plaintiff and her son. Plaintiff testified that Mr. Durbin called her "deafo." Kononen Depo. 137:10-11. Plaintiff's son also testified that Mr. Durbin called her "deafo" "lots of times, even inside our apartment." First Schmidt Decl. Ex. 2 (Cooper Depo.), at 52:9-10. He testified that Mr. Durbin would sit outside Plaintiff's apartment with other maintenance staff and "they would all point and laugh at my mom and our unit." Cooper Depo. 51:19-24. "Lyle was always making fun of her . . . most of the time he just calls her deafo in front of other staff members." Cooper Depo. 65:4-8. Plaintiff's son also testified that when he and Plaintiff went to the office to pay rent, Mr. Haley saw them through the window and said, "Oh god, now the retards are here to make a complaint." Cooper Depo. 57:17-25.

Defendant concedes that, viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence to create a genuine issue of material fact as to whether Mr. Durbin's treatment of Plaintiff was, at least in part, due to her disability. Def.'s Reply 17. But it disagrees

that Mr. Haley's comment is sufficient, arguing that it was "nothing more than a 'stray' statement, unconnected to any alleged disparate treatment he directed towards Plaintiff." *Id.*

"'[S]tray' remarks are insufficient to establish discrimination," but "[c]omments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990). Here, this was more than "stray" comment; the statement was allegedly made as Plaintiff and her son were approaching the office and Mr. Durbin was trying to close the blinds quickly. Cooper Depo. 57:17-25. Viewed in the light most favorable to the Plaintiff, a jury could conclude that Mr. Durbin was refusing to communicate with Plaintiff at least in part due to her disability.

Plaintiff does not provide any additional evidence of discriminatory animus by other SHA employees. As such, any claims of disparate treatment must be connected to Mr. Durbin or Mr. Haley. Plaintiff's claims regarding third party communication, parking policy enforcement, and the fence are so connected; Mr. Durbin or Mr. Haley were at least arguably involved in the decision process.

However, Plaintiff's requests for reasonable accommodations were assessed by Melanie Fletcher, SHA's Compliance Manager. *See, e.g.*, Blakely Decl. Ex 3, ECF No. 83. Plaintiff has not pointed to any evidence that indicates discriminatory animus on the part of Ms. Fletcher. Even if Plaintiff has shown sufficient evidence that her requests for reasonable accommodations were treated differently than requests by other tenants, she has failed to show a causal connection here.[2]

---

[2] Similarly, even if Plaintiff's smoking policy comparator were sufficient to show Plaintiff was treated differently, there is no indication that SHA's failure to install a $CO_2$ detector for her was due to her disability. Preferential treatment, while unfair, is only actionable when it implicates a protected class. *Cf. Candelore v. Clark Cnty. Sanitation Dist.*, 752 F. Supp. 956, 961 (D. Nev. 1990), *aff'd*, 975 F.2d 588 (9th Cir. 1992).

Summary judgment is denied as to Plaintiff's disparate treatment claims for requiring communication via third party for issues not covered in the Conciliation Agreement, for selectively enforcing parking rules, and for not permitting a fence around her property. Summary judgment is granted as to Plaintiff's other disparate treatment claims.

2. *Failure to Accommodate*

Plaintiff also alleges that Defendant discriminated against her by failing to accommodate her disability. FAC ¶¶ 20, 21, 30, 35, 36.

For a failure to accommodate claim, a plaintiff "must demonstrate that (1) he suffers from a handicap as defined by the [FHA]; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (quoting *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

Again, there is no dispute that Plaintiff has a disability or that Defendant knew of her disability. Plaintiff identified only one accommodation request that she has made that Defendant refused: Plaintiff asked for a second parking spot.[3] Kononen Depo. 141:24-142:6. But it is

---

[3] Ms. Kelley testified that she had requested an accommodation for Plaintiff but that it had been denied. Kelley Depo 19:18-20. The Court is unsure what accommodation Ms. Kelley is referring to here. The Court relies on Plaintiff's own testimony that the only accommodation that was denied was the additional parking spot. Further, Plaintiff's briefing does not indicate that Defendant refused to grant any other requested accommodation.

At oral argument, Plaintiff also argued that Defendant's failure to offer her a $CO_2$ detector or take other measures to combat the smoking issues was evidence of failure to accommodate. While she acknowledges that she never asked for that accommodation, she contends the SHA had an affirmative duty to take try to accommodate her once they were on notice of the harm. *See McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). But Plaintiff still must make some showing that the failure to accommodate is related to a significant disability she faces. While failure to implement a no-smoking policy or other mitigation when someone suffers from severe asthma attacks might amount to a failure to accommodate, *see Service v. Union Pac.*

unclear how that request is in any way tied to a needed accommodation. Plaintiff testified "The only reason why I asked for two is because everyone else has more than two – one. And I did ask for that only because I have two daughters that don't live with me. In case they came over or if I had a visitor come over, just so I had a parking place that I could have someone, if they came over, they could park without being worried about their car." Kononen Depo. 142:6-13. Per Plaintiff's testimony, there is no indication that a second parking spot is necessary for Plaintiff to have an equal opportunity to use and enjoy her home. This cannot support her discrimination claim. Summary judgment is granted here.

    *3. Retaliation*

    Plaintiff alleges that Defendant unlawfully retaliated against her for asserting her rights. FAC ¶¶ 21, 31, 36.

    Under the FHA, the ADA, and Oregon law, it is "unlawful to coerce, intimidate, threaten, or interfere with any person" for exercising their rights under the Act. 42 U.S.C. § 3617; 42 U.S.C. § 12203(b); ORS 659A.145(8). "[T]o prove an interference claim, the 'plaintiff must show that the defendant's actions affected the 'exercise or enjoyment of ... any right granted or protected' by the FHA." *Ohio House*, LLC, 135 F.4th at 670. To establish a prima facie case of retaliation, a plaintiff must show (1) she "engaged in protected activity; (2) [she] suffered an adverse action; and (3) there was a causal link between the two." *Id.*

    Defendant argues that "there is no evidence that SHA coerced, intimidated, threatened, or interfered with Plaintiff because she made requests for reasonable accommodation." Def.'s Mot. 24. In response, Plaintiff contends that the failure to enforce the smoking regulations and delays

_____

*R.R. Co.*, 153 F. Supp. 2d 1187 (E.D. Cal. 2001), there is nothing in this record to support such a claim here.

in fulfilling maintenance requests interfered with her ability to enjoy her home. Pl.'s Resp. 13.

However, Plaintiff has not put forth any evidence to indicate that these adverse actions are in any

way connected to her reasonable accommodation requests. Summary judgment is granted as to

the retaliation claims.

B.  *Housing Discrimination due to Race and Ethnicity under the FHA and ORS 659A.421*

Plaintiff also alleges that the same discriminatory treatment was due, at least in part, to

her race and ethnicity.

As above, these disparate treatment claims can be established via the *McDonnell Douglas*

framework. Plaintiff must show that (1) she is a member of a protected class; (2) she was treated

differently than other tenants in the terms, conditions, privileges, or the provision of services or

facilities in her housing; and (3) that disparate treatment was, at least in part, due to her race or

ethnicity. 42 U.S.C. § 3604(b).

Here, again, there is no dispute that Plaintiff is a member of a protected class. Plaintiff is

Native American. And Plaintiff presents the same evidence as above to demonstrate that she was

treated differently than other tenants. Thus, only the claims related to the delay in allowing

another dog, the requirement that she communicate through a third party, and the removal of the

fence are subject to analysis.

For evidence of discriminatory animus, Plaintiff points to one instance of Mr. Durbin

making derogatory gestures that implicated her Native American heritage while Mr. Haley and

another SHA staff member were present. Kononen Depo. 131-32. Plaintiff's son also testified

that Mr. Durbin made gestures mocking her Native American heritage. Cooper Depo. 53-57.

Plaintiff also recounted an instance when a different SHA staff member asked her where her

tribe was and then laughed about it. Kononen Depo. 135:7-16. These stray remarks, however, do

not give rise to an inference of discriminatory animus. *Merrick*, 892 F.2d at 1438 (citing *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989) to highlight "that stray 'remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue'"). Summary judgment is granted here.

## IV.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Finally, Defendant argues that the Court should dismiss Plaintiff's sixth claim, under Oregon's Residential Landlord and Tenant Act, ORS 90.320, because the Court lacks subject matter jurisdiction. Plaintiff asserts that the Court has supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367, "because they are so related to her federal claims that they form part of the same case or controversy." FAC ¶ 3.

There is clearly some factual overlap between Plaintiff's claim that Defendant delayed necessary repairs in her home and her claim that Defendant did not maintain her home in a habitable condition. It is less clear, though, that a claim regarding habitability is truly part of the same core set of facts as Plaintiff's discrimination claims. This Court assumes that the factual overlap was sufficient to bring Plaintiff's claim within the gambit of § 1367(a) at the time of the Amended Complaint. The factual overlap that existed, though, has greatly diminished—if not entirely disappeared— with the grant of summary judgment on Plaintiff's maintenance claims. Plaintiff's remaining claims have nothing to do with claims of plumbing issues or rodents. Pl.'s Resp. at 17. Given the unique legal and factual issues present in the ORTLA claim, exercising supplemental jurisdiction does not seem appropriate

Courts may decline to exercise supplemental jurisdiction when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Whether a home is maintained in a habitable condition is a complex issue of state law. *Cf. Kinney v. SZE Shing Lai*, No. 95-cv-1596-FR, 1997 WL 12950, at *5 (D. Or. Jan. 8, 1997) (declining to exercise supplemental jurisdiction after dismissing all claims over which the court had original jurisdiction and noting that "[t]he judicial system for the State of Oregon has far more experience with the remaining claim under the ORLTA"). As a matter of comity, it is appropriate to vest with the state courts the authority to determine not only what constitutes habitability but also the liability of a public housing authority if the apartment is found not habitable as well as the appropriate resolution in the form of the scope of potential damages and injunctive relief.

The ORLTA claim involves not only consideration of separate, unique legal issues, but also significant ongoing factual issues that are not relevant for purposes of the discrimination case. These are best handled separately. And because Plaintiff claims ongoing issues, the claims remain viable in state court. Thus, considering the unique state law issues, judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over the ORLTA claims.

//

//

//

//

//

## **CONCLUSION**

For these reasons, Defendant's motion is GRANTED in part and DENIED in part,

consistent with this opinion. Plaintiff's sixth claim under ORLTA is dismissed without prejudice.


IT IS SO ORDERED.


DATED this  20th  Day of October, 2025.

 /s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge
