**Steven M. Wilker**, OSB #911882
  Direct Dial: 503.802.2040
  Email: steven.wilker@tonkon.com
**Gracey Nagle**, OSB #215255
  Direct Dial: 503.802.5753
  Email: gracey.nagle@tonkon.com
TONKON TORP LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201

        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

KATIE M. KONONEN,                               Civil No. 6:21-cv-00179-AP

                Plaintiff,

                                                **PLAINTIFF'S TRIAL**
        v.                                      **MEMORANDUM**

CITY OF SALEM HOUSING AUTHORITY,

                Defendant.

## I.    INTRODUCTION

Plaintiff Katie Kononen ("Plaintiff") will ask a jury to find that Defendant City of Salem

Housing Authority ("SHA") violated federal and state laws prohibiting disability discrimination

in housing.  This trial will focus on the conduct of two SHA managers, Robert Haley and Lyle

Durbin, across three issues: (1) SHA requiring Ms. Kononen to communicate via an intermediary

beyond the scope of a 2010 Conciliation Agreement; (2) disparate treatment in parking

privileges, including the towing of Ms. Kononen's car; and (3) disparate treatment in permission

to erect a patio fence.  Due to the statute of limitations, Ms. Kononen's federal claims are limited

to events after January 18, 2020, while her state claim is limited to events after July 22, 2021.

**PAGE 1 – PLAINTIFF'S TRIAL MEMORANDUM**

## II.    BACKGROUND

SHA owns and operates an apartment complex in West Salem, Glen Creek Village ("Glen Creek"), where Ms. Kononen and her family currently live in a four-bedroom unit.  In 2010, the parties executed an agreement to resolve an earlier dispute (the "Conciliation Agreement") which required Ms. Kononen's household to contact Linda (Nina) Donnelly prior to reporting complaints about other residents, while requiring SHA to engage in an appropriate interactive process for disability accommodations.  By 2020, Glen Creek Property Management Coordinator Mr. Haley and Maintenance Lead Mr. Durbin required Ms. Kononen to communicate via Ms. Donnelly for issues far beyond those delegated to Ms. Donnelly in the Conciliation Agreement.  Ms. Kononen's efforts to directly communicate verbally to resolve and understand issues were denied by Mr. Haley, including when the request was made on Ms. Kononen's behalf by her social worker, Jennifer Kelley.  SHA further treated Ms. Kononen differently with respect to parking privileges, including by having her car towed even though other tenants' similarly parked cars were not towed.  In addition, SHA denied Ms. Kononen's requests to erect a small patio fence while permitting another tenant to have a patio fence.

## III.    PROCEDURAL HISTORY

This Court's summary judgment opinion narrowed the issues for trial by dismissing Ms. Kononen's claims for discrimination based on race and her state law habitability claim, and by narrowing the remaining claims.  Ms. Kononen can try three claims to the jury: disability discrimination under the Fair Housing Act, housing discrimination under the Americans with Disabilities Act, and a state law claim for housing disability discrimination.  Opinion and Order, ECF No. 100 ("Order") at 10, 13.  Ms. Kononen's claims focus on the conduct of Mr. Haley and Mr. Durbin, relating to the same three issues on all claims: that SHA (a) required third-party communication beyond the Conciliation Agreement's scope, (b) selectively enforced parking privileges including towing, and (c) denied Ms. Kononen a patio fence while others were permitted fences.  *Id.* at 15–16.

**PAGE 2 – PLAINTIFF'S TRIAL MEMORANDUM**

## IV.    DISCUSSION

### A.    FHA Disparate Treatment Claim

To prevail on her FHA claim, Ms. Kononen must prove: (1) she has a disability; (2) she was treated differently in the terms, conditions, or privileges in the provision of service or facilities as a tenant; and (3) the different treatment was, at least in part, due to her disability. 42 U.S.C. § 3604(f)(2). Only the second and third elements are in dispute at trial.

Regarding the third-party communication requirement, the issue is whether SHA required Ms. Kononen to communicate via Ms. Donnelly on matters outside the Conciliation Agreement, thereby treating her differently than other tenants, and whether disability was a motivating factor. Ms. Kononen will present evidence that she was directed to go through Ms. Donnelly and that she was ignored or rebuffed when she attempted to communicate directly regarding matters beyond the Conciliation Agreement, for example, issues with maintenance, rent, or paperwork.

On the selective enforcement of parking rules, the issue is whether SHA, through Mr. Haley, enforced parking rules against Plaintiff more strictly than against others and authorized towing of her vehicle, and whether disability was a motivating factor. There is no dispute that Ms. Kononen's car was towed from the Glen Creek parking lot, and Ms. Kononen will present evidence that the vehicles of other tenants similarly parked were not towed.

On the patio fence, the issue is whether SHA, through Mr. Durbin, denied Plaintiff a small patio fence while permitting others to have similar fences, and whether disability was a motivating factor. SHA does not appear to dispute that Mr. Durbin denied Ms. Kononen's request to erect a small patio fence, and Ms. Kononen will present evidence of other tenants being permitted to have patio fences.

To support discriminatory animus for all the above issues, Ms. Kononen will present evidence of Mr. Haley and Mr. Durbin making derogatory comments regarding her disabilities, and of Mr. Haley avoiding her when she approached the Glen Creek office.

**PAGE 3 – PLAINTIFF'S TRIAL MEMORANDUM**

**B.    ADA Disparate Treatment Claim**

To prevail on her ADA claim, Ms. Kononen must prove (1) disability; (2) qualification for services; (3) exclusion from or denial of services/benefits or other discrimination; and (4) by reason of disability.  42 U.S.C. § 12132; *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  Only the third and fourth elements are in dispute at trial.

The ADA disparate treatment claim differs from the FHA claim only with respect to the jury's finding on causation.  For the FHA claim, disability needs to be a motivating factor in the discriminatory conduct.  For the ADA claim, courts apply a but-for causation standard, meaning the jury must find that the discriminatory conduct was "because of" Ms. Kononen's disability and that the discriminatory conduct would not have occurred in the absence of her disability. *E.g.*, *Disability Rights Or. v. Wash. Cnty.*, 2024 WL 4046017 at *30 (D. Or. Aug. 30, 2024) (citing *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019)).

On each of the three topical issues to be presented at trial, Ms. Kononen will present the same evidence outlined above for her FHA disparate treatment claim.

**C.    ORS 659A.145 (Housing Discrimination – Disability)**

Oregon's housing discrimination statute mirrors the FHA, and the Court interprets the two identically.  *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. 2019).  Thus, as with her FHA claim, Ms. Kononen must prove (1) she has a disability; (2) she was treated differently in the terms, conditions, or privileges in the provision of service or facilities as a tenant; and (3) the different treatment was, at least in part, due to her disability.  The only difference between the FHA claim and the state law claim for trial are the different statutes of limitation.  *See* Order at 10.  Only the second and third elements are in dispute for trial.

The elements and proof required to prevail on this claim mirror Ms. Kononen's FHA claim above.  Ms. Kononen will present evidence on all three topical issues within the state-law time frame, also as outlined above.

**PAGE 4 – PLAINTIFF'S TRIAL MEMORANDUM**

**D.      Relief Sought**

Ms. Kononen seeks compensatory damages of up to $1,000,000 in total for all claims. She seeks economic damages of $316.80 related to the towing of her car, along with non-economic damages of up to $999,683.20 for her emotional distress.

Each of Ms. Kononen's claims carries an award of attorney fees if the jury finds SHA liable and awards damages.  *E.g.*, 42 U.S.C. § 3613(c)(2); 42 U.S.C. § 12205.  If she prevails on any claim, Ms. Kononen will seek an award for her reasonable attorney fees, along with her costs and disbursements, in post-verdict proceedings.

## V.      CONCLUSION

Ms. Kononen respectfully submits this trial memorandum and looks forward to vindicating her rights at trial.

DATED: March 9, 2026.

**TONKON TORP LLP**

By:    /s/ *Gracey Nagle*
    Steven M. Wilker, OSB No. 911882
      Email: steven.wilker@tonkon.com
      Direct Dial:  503.802.2040
    Gracey Nagle, OSB No. 215255
      Email: gracey.nagle@tonkon.com
      Direct Dial: 503.802.5753
    1300 SW Fifth Avenue, Suite 2400
    Portland, OR 97201

    Attorneys for Plaintiff

099997\33070\19339752v1

**PAGE 5 – PLAINTIFF'S TRIAL MEMORANDUM**